JUDGE LINDSAY
delivered the opinion oe the court — Judge Hardin dissenting.
On the 19th of March, 1870, the Hon. Thos. B. Cochran, chancellor of the Louisville Chancery Court, made an order removing from office Thomas P. Smith, the commissioner of said court. From that order Smith prosecuted an appeal, and upon hearing it was decided by this court “that the chancellor had no jurisdiction over the office of commissioner, but only a supervisory power over his conduct.” The order appealed from was declared void, and the cause remanded with instructions to allow Smith to “perform the duties and enjoy the privileges” of his said position without disturbance.
Subsequent to the filing of this opinion and mandate the case of Hoern's adm’r v. Doern’s heirs and creditors, pending before said chancellor for the settlement of the estate of the decedent, was referred to a special commissioner, before whom the creditors were required to prove their claims. Smith, who was in court, protested against so much of said order as referred the cause to the special commissioner, claiming that by virtue of his office he is entitled to have all such actions referred to *550 him, and to receive all fees arising therefrom. His protest was disregarded, and for remedy for this supposed wrong he filed his petition in this court, and procured a rule to be issued against the chancellor requiring him to show cause why he thus refused to obey the mandate in the case of Smith v. Cochran, before set out.
The chancellor by his response admits the facts relied upon by Smith, but denies that, as matter of law, the commissioner of his court has the right to demand that actions for the settlement of the estates of deceased persons shall be referred to him, and insists that in such proceedings it is within the power of the court to appoint a special commissioner, before whom such indebtedness shall be proven.
This is the sole question involved in this controversy, and upon its determination the action of this court must depend.
By section 12 of the act establishing the Louisville Chancery Court (3 Statute Laws, 157), the chancellor of said court was authorized and empowered to appoint one or more masters in chancery, whose duty it should be to state all accounts referred to them; to make and execute deeds of conveyance; and to do and perform all other such acts as might be required of them. Section 2 of the act of February 20,1839 (3 Statute Laws, 240), required all courts in which bills in chancery for the settlement of the' estates of deceased persons were pending to refer the same “ to a master commissioner, to ascertain and report the estate of every description, and to ascertain and report the debts against the estate,” etc. This act was general in its application, and as it was in nowise repugnant to or inconsistent with any of the provisions of the act establishing the Louisville Chancery Court, was applicable to and of necessity regulated all such proceedings in that court. No change was made in the law upon this subject until 1851, when the Civil Code of Practice was adopted.
Section 703 of the Code as originally adopted (which sec *551 tion is part of the chapter regulating proceedings in the Louisville Chancery Court) provides that “a commissioner shall be appointed by the court, and shall hold his office during its pleasure. He shall discharge the duties of the present masters of the court, and may receive the fees therefor which are authorized to be taken by them.” At the time of the adoption of this provision of the Code it was the duty of the masters of that court to ascertain and report the estate of deceased persons, as well as the debts against the same, whenever such reports become necessary and proper by reason of the institution of suits in said court for the settlement of such estates, and the court was required, to refer all such cases to the master, for the purposes before indicated. This section had the legal effect of creating the office of commissioner for the Louisville Chancery Court, of substituting the incumbent for the then masters, and of devolving upon him the performance of all such duties as were, under existing laws, being performed by them.
In 1854 the Civil Code of Practice was amended, and then for the first time was adopted the section designated in the amended Code as No. 467, which provides that “ in all actions for the settlement of the estates of deceased persons the court shall make an order for the creditors of such decedents to appear before a commissioner, to be appointed by the court, and prove their claims by a certain day to be named in the order,” etc.
A literal interpretation of the language used in this section might perhaps imply that the commissioner before whom the claims against the estate of the decedent were to be proven should be appointed by the court at the time the order of reference is made; and this is the construction the chancellor insists it should receive.
In the settlement of this controversy we do not deem it necessary to determine this question, as we are of opinion that *552 so much of section 467 as provides for the appointment of a commissioner is in direct conflict with section 804, which applies specially to the Louisville Chancery Court, and that the latter, and not the former, must control. It is true that the chapter of the Code relating exclusively to the Louisville Chancery Court was adopted in 1851, and the amendments, including section 467, were not enacted until 1854; but it does not necessarily follow because of these facts that the latter are to be regarded or treated as the latest expressions of legislative will, and that all the provisions of the original Code repugnant to or in conflict with the same were by their adoption modified or repealed.
Upon an examination of the act adopting the amendments (1 Session Acts, 1853 and 1854, page 55) it will be observed that the General Assembly provides that the Code of Practice in civil cases as amended shall be printed under the supervision of the commissioners, with the amendments arranged in their appropriate places; that the number of the sections in the original Code shall be changed to the number each section should properly receive under that act; and finally “that the Code of Practice in civil actions as herein amended shall regulate the procedure in all civil actions and proceedings in the courts of this commonwealth, and that all laws coming within the purview of its provisions shall be repealed.”
By this enactment the Civil Code as then amended was readopted by the legislature as a system, the whole of it taking effect as one general and continuous statute; and it must be so construed as to give force and effect to each and all of its provisions. To accomplish this end the chapter specifically devoted to the regulation of proceedings in the Louisville Chancery Court must be allowed to control the general provisions of the Code in all cases in which there is a conflict between them. A different rule of construction would have *553 the effect of nullifying or abrogating almost the whole of said chapter.
If section 467 is to be regarded as repealing or controlling section 804, in so far as the latter makes it the duty of the commissioner to ascertain and report the assets and indebtedness of the estates of deceased persons in proceedings for the settlement of the same, section 424 takes from the commissioner the right to make deeds of conveyances, and subdivision 1 of section 624 deprives him of the right expressly conferred upon him by section 809 of taking depositions within the city of Louisville. By such rule section 810, authorizing the Louisville Chancery Court to cause personal property to be sold upon a credit of four months, and real estate of over the value of three thousand dollars upon a credit of two years, is abrogated by section 405, which imperatively requires personal property to be sold upon a credit of three months, and real estate upon a credit not exceeding one year.
But it is useless to multiply such illustrations. We conceive that the correctness of the rule of construction before indicated can not be successfully questioned. We think this conclusion is fortified by the act of June 3, 1865, as well as that of March 17, 1870. Both of these acts expressly recognize the existence of the office of commissioner of the Louisville Chancery Court as created by the Civil Code, and both make important regulations concerning the rights and duties of the incumbent; one of them fixing his term of office, and providing for his impeachment or dismissal therefrom, and the other that he should no longer be required nor permitted to act as receiver for the chancery court.
Section 2 of an act approved March 5, 1867 (1 Session Acts, 1867, page 64), authorizes the courts to appoint a special commissioner in any case; and if the same applies to the Louisville Chancery Court, it not only authorizes the action of the chancellor in the matter under consideration, but *554 in effect places it within his discretion to deprive the commissioner of the power to perform any of the duties of his office, except to make deeds and take depositions. A careful analysis of the act, however, will show that it was not intended to apply to said court. It is entitled “ an act to require master commissioners to take an oath of office, and execute bond for the faithful performance of their duties.” It provides “that every master commissioner in chancery shall ex officio act as receiver of the court;” that he shall take an oath of office, and execute a bond conditioned as therein provided. We may presume that the legislature intended by this enactment to remedy some supposed defect in our system of procedure. The defects sought to be remedied existed as to master commissioners, but not as to the commissioner of the Louisville Chancery Court. He was already required to take an oath of office. He was at the time of the passage of the act the receiver of that court, and was required as such to execute bond. He held his office for a term fixed by the law, and it was not within the power of the' chancellor to remove him therefrom, nor to deprive him of the rights, privileges, and emoluments incident to the same. He is not a master commissioner in the legal acceptation of that term. It is true that he is required to perform such duties as are usually performed by this class of officials, but his office was created by a statute different from that authorizing the appointment of masters. He holds it for a different and longer term; and prior to the adoption of the act under consideration he was clothed with all the powers conferred by the same upon masters, and was already acting under all the safeguards and restrictions thereby imposed upon them. His office has a distinctive name, that of “Commissioner of the Louisville Chancery Court.” And as the same is not mentioned either in the title or the body of the act of 1867, and as said act states specifically that the officers to be affected thereby are *555 the master commissioners of the various courts, neither the letter nor the spirit of the same will authorize its application to the commissioner of the Louisville Chancery Court.
Without further elaboration, we are constrained to conclude that the suit of Doern’s administrator v. Doern’s heirs and creditors should have been referred to Commissioner Smith, and that the refusal of the chancellor to make such reference to him instead of the special commissioner was in effect a refusal to allow Smith to perform one of the duties and enjoy one of the privileges of his office. Holding, as we do, that the law designates the particular officer to whom all such suits shall be referred in the Louisville Chancery Court, and as the Code imperatively requires the order of reference to be made in all proceedings for the settlement of the estates of deceased persons, such orders are ministerial and not judicial acts; and the action of the chancellor in the case under consideration being substantially a refusal to execute a mandate of this court, the proceeding against him by rule is proper. Considering, however, the disconnected and in some respects incongruous legislation by which the rights, duties, and privileges of the officer complaining are defined, and the assurance upon the part of the chancellor that he has been governed in his official action in this matter by his convictions of right and duty, we are satisfied that no contempt of this court was intended by the order complained of.
In view, however, of the right of the commissioner to relief, we feel that our duty demands that a peremptory order be made by this court directing the chancellor of the Louisville Chancery Court to set aside the order referring the case of Doern’s adm’r v. Doern’s heirs and creditors to the special commissioner, and for further proceedings touching the reference of said cause in conformity with the conclusions herein expressed. Such order is therefore directed to be entered upon the order-book of this court.
*556 Not deeming it necessary or proper further to enforce the rule, the same is discharged. The respondent, however, must pay the costs of this proceeding.